Good afternoon, Your Honors. Deputy Attorney General Noah Hill on behalf of Appellant and Respondent C.A. Terhune. May it please the Court. The District Court erred in the incident case in granting petitioner habeas relief by relying on evidence adduced at a federal evidentiary hearing instead of relying on the evidence produced before the State Court. The Ventura County Superior Court issued the last reasoned opinion in the incident case. Did the Ventura County Superior Court decide the question of whether there was a breach of the plea agreement? Yes, Your Honor. Ventura County. As I read the opinion, it didn't. Your Honor, the Ventura County Superior Court looked to the evidence that was presented by the parties and issued its opinion holding that there was no promise of an indeterminate or, excuse me, a determinate 15-year term. And we know this. Where did it say that? Well, it's the fair import, Your Honor, of the trial court's ruling. And we know that based on its citation to In re Mojo. Right. And In re Mojo said that there are two different theories. One is breach of the plea agreement and the other is advisements. And this is all talking about advisements, but it's not talking about breach of the plea agreement. Actually, Your Honor, the page citation is talking about the plea agreement itself to In re Mojo. And we know by its citation that its determination was that there was no element of the plea agreement of a 15-year determinate term. And that is the fair import of the Ventura County Superior Court's opinion. Now, in making its determination, the Ventura County Superior Court solicited a return from the district attorney. The district attorney filed the declaration. I have never extended an offer, an indeterminate or, excuse me, a determinate term to the Petitioner. The Petitioner also filed evidence in the form of the testimony by the Petitioner at the guilt phase of the Faber trial, in which Petitioner testified that his understanding was that his sentence was to be an indeterminate term of 15 years to life. Now, at this point, the Ventura County ---- Well, he didn't say that exactly, did he? He didn't say, I got an indeterminate term of 15 years to life. No, Your Honor, he did not. He said I got 15 years to life. 15 to life. And then what he says at 8 years or something like that, that I thought I got 15 years and then I could be on parole for the rest of my life, right? Yes. That's what he later says. Now, there never was a hearing where he ---- where Mr. Buckley ever testified. Was there? Was there ever a hearing on that? There was a hearing on a written record, Your Honor, the Petitioner filed a declaration or declared under a penalty of perjury that the allegations contained were true in his petition in superior court. And it's important to note, as we look at the totality of the evidence before the superior court in this case, that at the time the district attorney filed the return with that Ventura County Superior Court then says, I'm ordering a traverse. I am specifically concerned about this testimony at the guilt phase of the FOBRA trial. I'm also specifically concerned about the fact that you said nothing during the sentencing hearing when it was explained to you that you're going to be in prison for 15 years to life and the words if and when you are paroled was explained to the Petitioner at sentencing. And there was nothing, there was no objection from Petitioner or his counsel. Now, counsel, did the Ventura County Superior Court apply the correct California State law when it made its determination that the advisement was that the sentence would be 15 years to life as provided by law and the Petitioner well knew of this? That is, the Ventura County Superior Court seems to be applying a subjective standard here that is, I understand, isn't it an objective standard that we look at in determining whether, what was the plea agreement here? Well, there's a lot to Your Honor's question. Yes, there is. And I think to address one specific, without conceding that contractual analysis is what is used, and we vehemently disagree that that's the standard. Why? Why do you disagree that's the standard? Because there is no Supreme Court, United States Supreme Court authority that says that a State must interpret its plea agreements by way of State contract law. Ricketts tells us the exact opposite of that. Ricketts tells us that this is a matter for a State to decide. We do not re-delve, we do not delve into a State's agreements and redetermine what constituted the plea agreement, certainly by way of contract law. Counsel, but there's a difference between the Supreme Court saying that a State must interpret plea agreements under its contracts and the Supreme Court saying that State plea bargains are to be determined under the law of the State, which in California, the California Supreme Court has said, will be understood under the law of contracts. Yes, Your Honor. And if I may get back to Judge Wardlaw's question and answer yours at the same time. Under the law of contracts, the Court would look to the objective manifestations of the party's intent. In this case, the trial, the Ventura County Superior Court did look to the objective manifestations of the party's intent. It looked to the testimony of the Petitioner at the guilt phase of the Faber trial. It looked to the fact that Petitioner did not object when, at sentencing, Petitioner was told that he was getting 15 years to life. These are objective manifestations. But that's after the agreement. Don't you have to look at the agreement itself, the plain language of the agreement, and then determine if you can't conclude the agreement from the plain language, determine whether or not it's ambiguous? And don't you have to just look at the contract? You can't look at things that happen later to determine what the understanding was when the parties entered the contract. Well, I think in the instant case, assuming that contractual analysis is being used, you do look to the language of the contract. You look at what is in the agreement, so to speak, and I won't even use the word contract, but the agreement at the time that the plea is entered. And in this case, there were misadvisements on the record, absolutely. And there was a misadvisement contained. The contract, isn't the contract the – maybe I'm wrong about this, but isn't the contract the – well, I guess his plea agreement reflects the contract, right? The entirety of the plea agreement would be a contract if you are going to analyze a plea agreement under contractual analysis. No agreement is consummated until it is accepted by the trial court when constitutional rights are waived and entered. Well, that – wait a minute, though. That may be true, but I understand California law is that what they look to is the plea agreement that's been worked out as between the prosecutor and the defendant. It's true that the trial judge may not accept it, but then if the trial judge doesn't accept it, that doesn't mean that the agreement that's been worked out between the defendant and the prosecutor is a nullity. It may mean that he, again, gets a chance to withdraw his plea or go back to square one, doesn't it? Well, I would point this Court to its own authority in Brown v. Poole. It – the Court says that everything that comes in up until the time that the plea is entered is part of the agreement. Can I go back to my question, if I may? Because I've now looked at Enri Mojo and the place where you cited it, and that was a case about advisements, not about breaches of plea agreements. So I still don't understand the language of the superior court's order was all about advisements. And it's only meaningful because California has made such a clear distinction that it seems perfectly plain that the court only decided an advisement question. And I don't understand why you're thinking it decided any breach of the plea agreement question. Because the issues were simultaneously presented to the court. That's true. They were, but you haven't decided it. I think that that is the fair import of the Court's determination that this was not – this was a misadvisement. It was not part of the plea agreement. It goes hand in hand with its citation to Enri Mojo. Yes, that's right. So it never decided any issue without a plea agreement. It certainly did decide the issue of the plea agreement, Your Honor. It said that the – it's – the fair import of its conclusion is that the 15-year determinant sentence, which was mentioned by the prosecutor on the record, was not part of the plea agreement. Well, counsel, let me make sure I understand your position. To the extent that there is a written agreement here, it is embodied in two documents, correct? The felony disposition statement, which in turn incorporates by reference the letter that the deputy district attorney sent to defense counsel. Yes, Your Honor. That is what we would call the plea agreement if it had been embodied in one unitary document that perhaps was more artfully drafted than these two are. Then the Ventura County Superior Court looked at the evidence surrounding the entry of the two written documents, which consisted of the statements that were made at the time that the plea was entered, as well as subsequent statements by the Petitioner, particularly his testimony in the guilt phase of the Falber trial, in order to determine whether he understood the meanings of the terms in the plea agreement. Is that right? That is correct, Your Honor. And then the Ventura County Superior Court made a guess, or you're going to have to help me with this because I don't see it specifically in the record, a finding of fact that the Petitioner, by virtue of those statements, understood at the time that he entered into the plea agreement that he was actually facing a potential imprisonment of 15 years to life. Isn't that what the Superior Court judge decided? That is what the Superior Court judge decided, yes. And that factual determination, as I understand it, means that we can overturn it only if we find that it was clearly erroneous. Correct. Okay. And then the question becomes, can the Federal District Court supplement the evidence by holding a hearing and taking testimony that was not before the Ventura County Superior Court? Yes, Your Honor. All right. That is Respondent's position. And the question is, which part of the plea colloquy do you contend is the part where either the DA, who is taking the advisement or giving the advisement, or the judge informed him that the sentence would be a maximum term of 15 years to life? That the sentence, that that's what the sentence was going to be. Yes, Your Honor. After the district attorney misstates the term of imprisonment as 15 years, he subsequently says, this is your understanding, it will be 15 years to life. What will be 15 years to life?  I said before, and it's also the case. He says in there now, as I stated before, it's also contained in the felony disposition form. Yes. That at the time of sentencing, the people will ask the court to declare. That's correct. The murder to be murder in the second degree with a maximum term of 15 years to life. Yes, Your Honor. Where, where in this plea colloquy is he informed that that's what his sentence is going to be? Subsequent, if you continue reading, he says, is that your understanding? But where does it say that that's what his sentence is going to be? I think that it is implied that when the district attorney is informing you that it's going to be a second degree murder with a term of 15 years to life. Well, how can that be when he says, as I stated before, and it's also contained in the felony disposition form, I gather what he's doing is reading through the form in sequence. He's reading off of the form. That's correct, Your Honor. But when he talks actually about the sentence of the defendant, he says, do you understand that for second degree murder, you could be sentenced to State prison for a maximum possible term of 15 years? Yes. Yes. That's the, that's the focus on what this defendant is going to get. Now, why wouldn't the defendant be listening to the rest of this stuff as what could be, you know, what the general terms are of a second degree murder? He's been told this is going to be charged as second degree murder. He does understand that. I would think that the defendant would be listening to everything that's said during the plea colloquy. Well, okay. But he does say yes. He does say yes, Your Honor. I understand the terms to be that the people will move this to be declared second degree murder with a top term of 15 years. But you just told me within minutes, or if not seconds, before that I, the defendant, I'm going to be sentenced to a maximum. That's quite direct and clear, a maximum of 15 years. And we know that that's the provision that the defendant actually initialed and signed off on. He did not initial and sign off on what the process was. No, but he was shown, he was shown the felony disposition statement during the plea hearing, the change of plea hearing. And this is on page 8 of the change of plea hearing. It's reflected in the excerpts of record at page 81. And the district attorney says, I'm showing you this document, the felony disposition form, and here it has your initials, and here are some paragraphs that I wrote, and here are my initials. And Petitioner doesn't jump up and say, wait a minute, I didn't see those handwritten paragraphs contained in the felony disposition form. He asked him, did you sign this document? Yes. And did you sign this document because you read each of the paragraphs that you have initialed, and you understand what's contained in these paragraphs? Yes. That's the subsequent question. But he does show the document to Petitioner, and there's no. He asked him, did you sign this document, and did you sign this document because you read each of the paragraphs. The yeses were very specific, and they were related to the paragraphs he didn't sign. He didn't ask him to read the document. He showed him a document and said, is this the document you signed? There's nothing that indicates he read through the document except that he testified about the paragraphs that he initialed. He said, did you sign the document because you read each of the paragraphs you've initialed? Where, you know, this is exactly the same as with Judge Price's question. Where is it that you get from this that he was – that he read these paragraphs that don't have his initials? I believe that I indicated that he was shown the document, and this is to go to Petitioner's declaration before the Ventura County Superior Court that he was never shown this document. And I think that's the reason that Petitioner claimed paragraphs by the district attorney. Where in the record does it show specifically he was shown the paragraph that the prosecutor added? I think we have a finding of fact as to that by the Ventura County Superior Court. Sorry? I think we have – excuse me, Your Honor. The Ventura County Superior Court relies on the fact that Petitioner has signed this document with this advisement in it. And I think that the implication is that the Ventura County Superior Court has made a finding. But you've characterized it as if he was shown the document and walked through it and read each of the paragraphs. No, I don't believe that that was my characterization, Your Honor. All right. So what you're saying is that we would have to assume from the fact that a document was shown to the defendant, and he was then asked to look at the paragraphs that he actually initialed and that he understood those, that we should infer that he actually saw the uninitialed one that modified the terms, and that because the Ventura Superior Court found that as a fact that we're – that we're bound by that. There's no evidence to suggest otherwise before the Ventura County Superior Court, Your Honor. And the Ventura County Superior Court made its factual findings based on the record that Petitioner put before it and extended an opportunity to Petitioner to put forth further evidence to counter its concerns. And in doing that, was it using an objective or a subjective standard? I don't believe that it makes a difference, Your Honor, because I think that the question before this Court is whether or not the California court determined that this was a voluntary and intelligent plea, and it ends there. However, it's clear that the Court looked to – We have to know what the plea is first before you can decide if it's voluntary and intelligent. Don't you have to know what the scope of the plea is? That's correct, Your Honor. So the question is, is that an objective determination based on contract law? And if not, how does the subjective determination dovetail? Well, we know that what the Court looked to, the Ventura County Superior Court, was the objective manifestations of Petitioner's intent in terms of Petitioner's silence at the plea hearing, in terms of Petitioner's counsel saying, you don't need to reassign this to another judge because you can only sentence him to 15 years to life. So – But all of that goes not to the plea agreement itself, but to his – the question of whether he might have understood something at the time of the plea agreement at the plea colloquy, which isn't necessarily what's in the plea agreement. So if we're going to objectively look at the plea agreement, how is any of it – how is it relevant what was said after the fact about the plea agreement? Well, if this Court wants to look to the plea agreement, our position is that it is an ambiguous plea agreement. I'm sorry? That it is ambiguous, that there are competing provisions, that there is competing evidence, that you have Petitioner told at one point. Inconsistent. It's inconsistent. Correct, Your Honor. And at that point, under State law, you would look to parole evidence to determine the question of whether – of what Petitioner's intent was. If you looked at it, the intent was a meaningful agreement that you didn't want. Never mind. That sparks some interest. I'm sorry. The questions overlap. I'm sorry. I see my – Well, you look to intent. Okay. So finish your end. You look to intent. And the question is, the trouble I have with the colloquy before the plea is that nobody's really analyzing, as you would in a contract case, the document and saying and trying to reconcile the two conflicting provisions. It's inferences from what appears to be a normal plea colloquy, where nobody's the judge, neither the judge nor the prosecutor, is focused on trying to resolve an ambiguity. They're kind of leading the Petitioner through, and then they're saying, aha, because he answered yes to a variety of questions, he clearly understood that the specific 15-year limit on his term that he initialed didn't really mean that. Well, Your Honor, the Court also considered what was told to Petitioner and Petitioner's counsel prior to the plea in terms of the district attorney's declaration that he was never extended any offer other than in a determined term of 15 years to life. But let me ask you guys, I mean, the letter. I don't actually have it before me, but in the letter, did it say 15 years to life in the letter? No. The letter is silent, Your Honor, as to any sense. It doesn't speak to either 15 or 15 to life. That's correct. Yes. Okay. So we have the letter, and then we have this disposition agreement that is, as you can see, ambiguous. Right? That's what you have to look at. We have the letter, and we have, as Judge Tallman said, the letter and the plea disposition agreement. That's correct. Okay. So the plea disposition agreement has two inconsistent paragraphs, which renders it ambiguous. At that time, under the California contract law that governs plea agreements, don't we construe this agreement against the person who drafted it, against the person who included the language that rendered it ambiguous? No, Your Honor. Why not? At that point, you would look to extrinsic evidence. What is the authority for that? The authority for that, Your Honor, is Brown v. Poole is the authority for that, Your Honor. When this Court held that we have no reason to look to the extrinsic evidence offered by the, well, I'll say the people, although it was styled to respond, I imagine, because we are making a finding of law in Brown v. Poole. Let me step back. There's been some assumption that the agreement is ambiguous, but the only ambiguity is if both terms were somehow enforceable, that is, 15 to life and max of 15. If you have an agreement that's signed by someone and everything is initialed, and you have an additional paragraph which is not initialed by both parties, isn't it on the terms of the agreement, the agreement stands on what is agreed to and what is initialed? Isn't that basic contract law? No. I think that in terms of a plea agreement, that whatever is brought forth prior to the time the plea is accepted by the trial court is part of that agreement. Now, we don't know. I don't know that the fact of initialing. The contract is everything that's talked about plus the written agreement, in your view? In my view, contract analysis isn't playing the role in determining the Petitioner's understanding of his plea agreement that under B-1. A Petitioner can misunderstand a plea agreement to his detriment, for example. And then you don't say, well, sorry, you thought it was life and it's only 15, so you get life. I mean, it doesn't work that way, does it? No. No, of course not, because what you look at is you have to first determine what the four corners of the plea agreement stand for, correct? Yes, Your Honor. Okay. So the plea agreement here, if you say the letter is silent, we have the written agreement. What's unclear to me, and maybe you have some California law that will help me out here, is why the agreement is rendered ambiguous by a term to which there's no evidence that he agreed on the face of the agreement. Well, because we have a finding by the Ventura County Superior Court, and that's really what this Court's concern should be focused on. The advisement finding? No, the finding in terms of the plea agreement. These are simultaneous findings by the Ventura County Superior Court. And the Superior Court rejected Petitioner's allegation that that was not part of the plea agreement of the felonious position form at the time that Petitioner signed the document. Counsel, is there, what evidence is there that Mr. Buckley, at the time Mr. Buckley signed the agreement, that he had seen the handwritten paragraph initialed by the district attorney? What evidence is there? Well, at what point, yeah, at what point was the, was the, was that paragraph added to the document? Is it clear that when Mr. Buckley signed the document in December of 1987, because the DA doesn't sign it until January of 1988, a month later, is it clear that when Mr. Buckley signed it in 1987 that the handwritten paragraph was a part of the document that he signed? I say, yes, it is, that the finding has been made by the Ventura County Superior Court if we are excluding evidence presented at the Federal evidentiary hearing. I'm sorry, Your Honor. What evidence did the Ventura County Superior Court have of that? The district attorney's declaration that no promise was ever made regarding a 15-year term, excuse me, a determinate 15-year term. Well, that's, yeah, but that's contradicted by the very paragraph that Mr. Buckley initialed. By the evidence that it was the district attorney's burden in Superior Court to establish that that was, in fact, in the agreement. Mr. O, at the very least, there isn't any evidence in the record that the district attorney can come forward and say, I signed, I wrote that, I handwrote that paragraph on this date, and Mr. Buckley signed it at a time after that. We don't have that kind of evidence here, do we? No, there was nothing before the State court. Okay. I see that I have three and a half minutes left. I'd like to turn to rebuttal. Good afternoon. Please, the Court. Alan Bloom, on behalf of Brian Buckley, we're the Respondent in this situation. I'll start by saying that, of course, in all respects, I think Circuit Court Justice Bea's decision is or opinion is eloquent in every degree. Scenting opinion. Yes, the scenting opinion is eloquent in every degree. I think the fall is going to be huge. But can you tell me why you failed to present the evidence to the State court? That you later tried to introduce in the Federal District Court at the hearing? Because AEDPA seems to frown on that practice. AEDPA does, of course, does seem to frown on the practice. I will answer that question. I don't think you get to that question unless you're going to look under 2254 D2. I think it's a D1 question. Well, that's hard to answer. My question is, is it D1 or D2? I don't see why we have to go past D1 and the objective analysis that we have here. But let me try to answer the question as best I can from a point of view of this case. I wasn't the attorney at that time. I think it was a situation where the lawyer who did that job, who presented on behalf of Brian, who was 22 years of age at the time, this plea was entered, never had been in trouble. The law didn't have experience with these things, did not made a blunder when he did not present that. I came in on the case later, saw that this error attempted to present it at the time. However, I don't think, actually, even though I think it was a mistake of the attorney and even though, of course, defendant is, or in the case Petitioner is responsible even if Petitioner doesn't know what's going on, the law is very clear that he's stuck with whatever the decisions made by his lawyer are, even if there are omissions. I don't think, even though that should have been done, I don't think that that eliminates the issue because it was the court's fault for not insisting under California Rule 4.551F of requiring a hearing in that case. So a hearing in your estimation under California law has to be a live oral hearing. It cannot be conducted on sworn affidavits or the sworn colloquy before the trial court and the documents that were introduced as exhibits at that hearing? I just assume that a hearing means I'm going to hear you. Well, what you and I assume probably is nice, but do you have a case that says that hearing requires live testimony? I mean, we hold hearings all the time on written documents and sworn transcripts. Yeah. I understand that there can be subtleties within a hearing. There can be different kinds of a hearing and so forth in that regard. And all I can say, Your Honor, is that I think that taking a look at what's here I really am not prepared to say there couldn't possibly be such a satisfaction of it in any case. But looking at what was here, I think what you had here is briefing. I think you had the exhibits that were attached to it. The purpose of 4.551F is to flesh things out. But the concern I have there is that's really a State procedural requirement, however it might be interpreted as oral or written. And the question under AEDPA, whether we start with one or have to get to two, is a Supreme Court law or unreasonable application. So maybe you could start back on why you think Section 1 is the appropriate section for analysis. I'd be happy to. All I did was get a praise out for Circuit Court Justice Beyer and Justice Tolman wanted to go with that, and I think it's a good point. But I do believe, quite frankly, that you don't ever get to two, that you get to one, that this is an analysis that should be done. The problem with that is that there's no declaration, as I understand it, in the State court record from the Petitioner. So although we now know that he says that he understood 15 years to life in a certain way, there was no declaration to that effect. And we also now know that he says he never saw this handwritten statement, but there was no declaration to that effect. So there was really not a whole lot to hold a hearing about. If you just looked at the paper, that was before the superior court. The question is whether on that record the objective contract standard is met. Exactly. I don't think you have to get to the question of whether or not there should have been a hearing or not. This superior court judge, this State court judge, was unreasonable in its – in his application of Federal law under 2254d1, because the contract analysis most definitely applies. This Court has today gone on and taken a look at what really we have. We have a silent letter. We have a change of plea form that on January 4th, 1988, which was starting at ECR 37, you have a particular section there which reads, in my view, absolutely without any dispute on page 39, that Brian Buckley signed, I could be sentenced to State prison for a maximum possible term of 15 years. Well, he couldn't – but in California, he could only get 15 to life. I mean, you can't get 15 years for a second-degree murder. Am I correct? There is no law that says that you can get a determinant of 15 years. Brian Buckley doesn't have the slightest idea. No, but if you look at the penal code in California, you can only get 15 to life on second-degree murder. Yes, that's true. My question is, logistically, why does it come up at eight years that he is sentenced to life? Now we get the habeas. When Brian was told by Larry Troxell, the DA investigator, he would get out in seven and a half years, because that's what you're going to do on a 15-year term. When he was told by his mom, who had been told by Don Glenn, the DA, and Larry Troxell, when he, in fact, testified at the Faubourg penalty phase trial and he was asked by the defense attorney for Faubourg, you're getting a deal on this thing. You're only selling your testimony. What's the deal you're going to get? He testified, I'm getting seven and a half years. So it's seven and a half years when he expects to get out. Is that what he said at the trial? At the penalty phase. Yes. That he was only getting seven and a half years? I thought he said 15 to life. No. He said that they testified twice at the Faubourg trial. It was divided into the guilt phase and into the penalty phase. He was under the impression, Brian, I believe, was under the impression that by the time it came, by that time, he was under the impression a determined 15 years, after which, followed by a period of time on parole for life, is another way lawyers say 15 to life. At the guilt phase, he said, what's your sentence? He said 15 to life. A month later, and it's an exhibit, it's at ECR, page 104. If you take a look at 104, line 13, the defense lawyer asked him, so what are you getting? And Glynn, the DA, said that's irrelevant what you're getting. And the trial judge says, no, that's relevant. What are you getting on the sentence? Brian said seven and a half years. So he was under the impression, like everybody was, that you're going to get halftime at that point, and then halftime of 15 years. Alito, that's your position, but what do we do with the factual determination by the Ventura County Superior Court who credited what he said at the guilt phase as what he's understanding? I don't – I take a bit of disagreement with you, Your Honor, with regards to my impression. Brian Buckley's impression was that, and we know that. Now, whether or not we can consider that, because it wasn't properly before the – or it wasn't in front of the Superior Court. Well, counsel, we frequently hear arguments on appeal from lawyers as to what their clients knew or thought, and argued vigorously with great force. But we've got a factual finding by the State court who looked at that evidence and said essentially he knew he was looking at 15 to life. And we – all I can say is this. This statement was made in – when Brian said that at page 104 at the time of his trial, that was when he testified on January 7th, 1988. There wasn't – I mean, this is not some later on coming up sort of thing, make my case look better, years later. It was before the Court made such a finding. That Court didn't have the benefit of this transcript because he didn't conduct a hearing and he would have done it, and because Brian's lawyer messed up and didn't present it, all of which were back onto that path and everything else again. But I think, quite frankly, I think in my view the best way to analyze this is first put it in the capsule of the question of whether or not this is a D1 case, then take a look at D2. Quite frankly, I think D1 makes it absolutely clear that this – that the Superior Court was wrong. It was unreasonable when it made that decision. D2 is – is more murky. It's a tougher path to follow. Well, under the contract analysis, what is in the record about the modification? Because Judge McEwen is correct that if it was added and not extended to, it's – in my mind, it's either invalid to begin with or it renders the contract ambiguous. But I'm not sure which, because it's very unclear to me what exactly happened with respect to it, because it clearly wasn't in the letter, and it seems unclear whether it was ever acknowledged or extended to by your client. Well, it wasn't, and it might be. What's in the record about that? The record – the record shows on page – I mean, at the time, at the time that the contract was entertained. Page 41 of our ECR. That's the date Brian Buckley signed this form. He signed it December 17th, 1987. Don Glantz signed this form January 4th, 1988. That's the record that establishes. So you're saying the prosecutor signed it after your client signed it and could have put the modification in at that time? I think that's a clear – That's a fair inference, is what you're saying? I think that's a fair inference of what the record was then. Because it did. Why does that matter anyway? Because all this document, all the handwritten material says is that the people will move for a term from 15 years to life. And the other provision, and I think Justice Pius asked this earlier, says what the term will be, which is 15 years. So if someone was reading these two together, they'd think that the second one was just a statement of what the government wanted, but not what it was going to get. Exactly. As Justice Fischer said, what you have here is a situation where you have a specific term where Brian Buckley is told what he's going to get, and then you have a general statement of law, what people get under general terms with regards to second degree, showing what the general rules are. But we know, or he knows, the reasonable interpretation is the objective analysis should conclude, exactly as you said, that there's only one conclusion, that it's a determinant 15 years after which – and by the way, if you take a look at the page – Mr. Bloom, when you have a chance, let's say we go along with you and you say, okay, the contract really says 15 years to life – I'm sorry, really says you get a sentence of 15 years, and of course the state court was wrong and we agree with that. What flows from that? I hope we say that the state court was unreasonable, and then what flows from that is a decision that the writ should be granted, and if you're asking what I believe the relief should be – But that's – okay, what you then have is a contract between the prosecutor and the defendant for a sentence that's illegal under state law. Yes. And unfortunately the government is – And I'm not sure how we can go about enforcing a contract that's on its face illegal, that provides for us for an illegal result. Will essentially then be as a matter of Federal law – I mean, we can undo the contract. We can say, okay, you can – you – this contract says what – you know, we agree with you, the contract says what – what you claim it says. Obviously you can't get a 15-year sentence because state law simply doesn't provide for a 15-year sentence for second-degree murder, so you – you know, you get to go back to – you get to go back out of your contract. I understand that as a possibility. Of course. But I don't understand how it is that a Federal court can force a state to give a defendant a sentence that is illegal under state law. Brown v. Poole and Santabella both deal with the premise that the government is stuck with it. They entered it. They got their benefit. They gained everything about it. They put Brian's life in jeopardy. For the 12 years he was in a prison, waiting to be killed if he was going to be a snitch. They got their conviction on Flauber. They got his testimony on – Brown v. Poole involved in an illegal sentence? Pardon? Involved in an illegal sentence? I'm sorry. I didn't hear you. Brown v. Poole involved in an illegal sentence? It has to do with both of – as my understanding of both of those cases read together, that we're talking about a situation where the government is stuck with their contract. If they enter into something and they gain the benefit out of it and they have sucked the marrow of the – Was it involved in an illegal sentence? Was this or was Brown v. Poole? Was Brown v. Poole involved in an illegal sentence? I don't – no. My understanding is it wasn't. I can – Okay. So it doesn't really answer the question. Sure. If the government – if the defender can get up to 30 years and the government says you'll get 20 years only, then fine. You say you're stuck with that sentence, which is a legal sentence under state law. Maybe you could have asked for more. Maybe you should have asked for more. Whatever. We're going to limit it to 20 years. But if you have a contract that, as you wish it to be construed, and I'm assuming you're sort of buying on all those arguments, appalling Judge Baird's analysis, saying that's what the contract provides, you still have a contract that provides for something that is not permissible under state law. Let me get it from a different point of view. Let's say that the contract was signed before defendant walked into court for the plea bargain, right? He had signed it and the prosecutor had signed it. Did you have a binding contract at that point? I think the – Did you have a contract – at the time of the change of plea, was there a binding contract? He had signed it. The prosecutor had signed it. If there's an offer and acceptance and – Okay. So he walks in and let's say there isn't any secret writing on there. Let's say there's no ambiguity whatsoever. And he's got a contract that says you've got to – you know, you do this, you plead guilty, you're going to get a maximum of 15 years. And at that point, everybody notices and says, hey, you've got a contract here that's ironing. You know, obviously the contract says what it says. Everybody agrees there's no ambiguity whatsoever. But the superior court is, by law, precluded from giving a sentence that's agreed to in the contract. What happens at that point? The court wouldn't enforce it, which California law allows. So you've got a binding contract. It's not enforced. Why? I mean, the defendant says, wait a minute. I want my bargain. I bargained for this. I have a deal. The government is stuck with it. And so by God, Judge, you want to give me the sentence that I bargained for, which is 15 years maximum. California State law gives the authority to the court never to have to go along with a plea bargain. The court doesn't want to. Whether the sentence is illegal or whether the court doesn't feel comfortable wanting to do it. Didn't Brown say that even if the sentence or the promise is an improper promise, that the State is separate, that that's not Brown's problem? Yes, but Justice Kaczynski left out a very important point. We are judges. This is a federal court. We're judges. Yes, Justice Kaczynski. No, we're judges here. Okay. But, but, but. Judge. Judge, excuse me. I apologize. Your Honor. I will. His Honor, Judge Kaczynski didn't ask. Hold on. Back to the question, because Judge Kaczynski asked you about whether Brown was a case in which the State promised something that was not a proper sentence. Isn't the answer, yes, that Brown was such a case? Brown was such a case. But Judge Kaczynski didn't add that. He wanted to bring me to the point. But what Judge Kaczynski didn't do, with all respect, Your Honor, is what you didn't present, is the fact that there wasn't, at that moment, there wasn't that the government hadn't gained everything out of that contract at that point. They hadn't gotten the testimony under the argument, under the scenario you present. That's not what happened here. They waited until the hearing. So what? The scenario couldn't, I mean, the plea agreement, he could withdraw from it. He wasn't getting the benefit of the bargain. Of course not. Your side could withdraw from it at that point under Judge Kaczynski's analysis. Right. That's the answer. That's exactly correct. That's what would have happened. The judge would have said, I won't go along with it. That puts the parties back in the situation where they can all withdraw and not have to go forward. But the question Judge Kaczynski asked. Wait, wait, wait, wait. You know, first of all, I'm not sure why it matters. He still has a contract. And if he has a contract, he says, I'll perform my side. I'm willing to perform my side. And if I have a contract, I have a contract. I'm entitled to it. If not, I'll change the hypothetical. I'll make it easy. I'll say, you know, before they walk into the judge, the government is suspicious. And so they make him testify first. So they sign, you know, we've signed this deal with you. So, you know, we have it in writing what's going to happen. But we're not going to go for a change of plea. We're going to keep postponing your case, as you know happens quite frequently, until you actually get on the stand and do your deal. You testify against your partner. So now they're in court. The defendant is sung like a canary. And he says, okay, I now have a deal. I perform my side of it. Judge, I want you to enforce a sentence on me, as it says in the contract. And the judge says, well, I see the contract here. But I also see the criminal code. And the criminal code says, I cannot do this. You are trying to bind me with a private contract, with a contract between you and the prosecutor, to perform an illegal act. An act that I, if I perform it, would be violating California law. Now, you can imagine that a judge in that situation would be forced to impose a sentence, even if the defendant has performed his side of the bargain, where the judge will say, well, yes, okay, you know, the law says X, but you've agreed on something else. I'm going to violate the law. If Brown v. Poole is to be the law, and it is, then most definitely I can envision it. In fact, that's what would have happened. If Mr. Buckley could not have been resealed to his status quo, then quite frankly, then if he had given what he should have given, if he had given what he was asked for his life, Brown v. Poole can be overruled, of course. But, well, it can. But Brown v. Poole did not involve any legal sentence, do you get me? I do agree with that. But it specifically deals with the situation of where the two available remedies are rescission of the agreement and specific performance. And it simply says, Brown cannot conceivably be returned to the status quo ante. That leaves specific performance as the only viable remedy. And if that's the case … If it's a lawful sentence. If it's a lawful sentence, if the one alternative is unlawful under State law, I just don't understand how we, as a Federal court, can force, essentially what we're then forcing a sentencing judge to perform an act that he could be disciplined for. Because this Court is going to do … Equity. Well, we cannot allow the government to take advantage of a situation when they created the situation, they created the contract, they got their benefit, they put a client in jeopardy, literally for his life, and they got everything they wanted, and they at that point stuck with it. And I think this Court can afford that. Well, the question before us now, what standard should be applied in trying to figure out what the agreement was? I think, yes, of course, that is the primary thing that which is before us here. And that's what Judge Kaczynski asked us to go beyond that and assume that that was that. What's the remedy? That's why I was addressing that. I understand why you were. In the Moser case, I gather that there was a statutory lifetime parole, I believe. And the argument was that there was a negotiation for a three-year parole. And after rejecting the certain theories to that end, the net result at the end of the case, as I understand it, was a recognition that nonetheless that the extrinsic evidence might demonstrate there really was a three-year parole as part of the parties' plea agreement, and so the Court remanded to determine whether that was the case. So the assumption seemed to be that if there really was a three-year plea agreement, even if it was illegal, it would still be enforceable. Is that not right? Yes. I think that is right. Here you have a situation, in my view, I believe the first, if you look at the document itself, the contract here is a document itself. Quite frankly, I think that it does show that the agreement truly is for a maximum for Brian Buckley's situation, 15 years after which he gets a lifetime parole. Mr. Hill has said on behalf of the Respondent that at best that's an ambiguous conclusion, and I disagree with him. But even if it is ambiguous, and then you take a look at the next step, the next tier within this California State law, which is – which would refer to Civil Code Section 1649, the next thing you look to is this other kind of parole evidence which is around it. And at that time, you take a look at the transcript of the change of plea at that time. But that, quite frankly, I think also establishes that the deal is 15 years, after which he's going to be on parole. And then – and then Don Glenn says, as I've said before, in fact, he never said it before at all, but as I've said – I thought your argument – I understood your argument to be that everybody else in the courtroom understood, because they were all familiar with second-degree murder, what the punishment was, and that it was your client who was under the misapprehension based upon the statement that Mr. Troxell had made to him, and what the other part of it was. To be honest, I'm not sure what Don Glenn absolutely knew at that time. If you look at what he did, he's doing the colloquy with Brian Buckley. He's going through the change of plea form on the record with him. And when he gets to the part of the form where he asks about what's the length of time on parole, he doesn't know. He turns to the judge. Now, this is 1988. The law had been relatively new at the time. He turns to the judge, and he says, Judge, I'm not sure what the status is of parole. But a parole question is different than a – that's a separate – I think he asked a separate question than 15 to life and parole, because the – that's when you're eligible, you know. Obviously, when you've done enough time, then you go before the parole board, and then how long can you be on parole after that? Or when do you get parole? But 15 to life means you may never get out. I agree, Judge Callahan. But they didn't directly deal with the exact same thing. They weren't talking about the length of term at that point. But the question was, what did Don Glenn know, who knew, and how much was he known? I don't quite know if Don Glenn wanted to take advantage of this situation or just wanted to slip under the rug. He very much wanted a conviction in his case. He knew the case was falling apart against Faubourg. He wanted Brian Buckley's participation and help in it. When – I do know that Don Glenn sat in that courtroom when Brian Buckley was asked a question, and he was – and he – the other lawyer said, well, what are you going to get 7-1⁄2 years that Don Glenn didn't – at no point, at no point, not that year, not a year-and-a-half later, not 8-1⁄2 years later, not 15 years later, ever came to Brian Buckley and said, you know, you were wrong. So I don't know exactly what was going on in Mr. Glenn's mind, but I don't think that's the issue that we don't have to put onto Mr. Glenn some sort of evil intent  The question is, is there a – Kennedy. What do we make of the fact that the defense lawyer knew – I mean, that's in the record. He knew what the punishment was. I mean, can – do we not – do we presume, notwithstanding counsel's obligation to inform his client in connection with the entry into a plea that he never talked to him about? Brian Buckley says right there, what would anybody say? I don't know if you're a sophisticated lawyer or not. A layperson, almost anybody, when they're going to sign a form that says I could be sentenced to state prison for a maximum possible term of 15 years and after – No, no, no. I understand what Mr. Buckley said. It's very important as to what he understood, obviously. But I guess the question I'm asking for you is, what do we assume with regard to the defense lawyer who has an obligation to inform his client of the consequences of the plea and in fact signed on Excerpt of Record 41, attesting to the fact that he fully explained the provisions of the plea agreement to his client? Do we assume that he just forgot to tell him what the sentence was that he'd be facing? I mean, in my experience as a criminal defense lawyer, that's the only thing your client wants to understand, is how much time am I getting? What am I going to get? Yeah. Troxell had told him 15 years. We know that now. You're asking to go into somebody's thinking and so forth. You're not asking what was on the record. So I'm going past it. I really think what had happened was that when Brian Buckley was told he was going to get a 15-year term, after which, it doesn't say maybe, it says after he's finished that term, he's going to be on life or parole, and then Don Glenn says, as I said before, 15 to life, I just think at that point, Brian Buckley's mind is that 15 years determinant followed by a life on parole, it's common called amongst those lawyer types as 15 to life. And I think that Mr. Witzel might not have thought so, or maybe he was using that phrase, and maybe Don Glenn was thinking that. But the contract says that, and I think that's why it's enforceable. It has to be enforced that way. Is Mr. Buckley still in prison? No. Mr. Buckley sits here in the courtroom right now. Well, then what are we doing? What exactly are the consequences here? He goes back to prison. He goes back in because of the district court opinion. Oh, I see. He's out because of the district court opinion, but he hasn't been paroled. Well, here's how it works. We handle this case on parole, but before the decision was made with regard to his parole, the district court decision ordered his release. The people attempted to have that decision defrayed, delayed, and not put into effect. The district court judge refused to do that. He's been out of custody. He's been before the — he lives in Ventura, has a job in Ventura, working and is doing very well. And even Don Glenn and Mr. Hill, I don't — I'm not saying anything out of school because when we argued in front of the three — just the three-judge panel before Mr. Hill acknowledged this, that everyone, even Don Glenn, the district attorney, believes that Mr. Buckley should be out of custody in terms of what the criteria is. So the final parole decision was not made? The parole decision was not made. I mean, he's technically — even if you said that the deal was 15 to life, isn't he technically eligible for — he was having a parole hearing. I mean, he would technically be eligible for parole, right? We just don't know what the parole board is going to do. We have no idea what the parole board is going to do at all. Of course not. He would be put back in custody. He would be put back in prison. He would go through the parole process. We don't know what a governor of the State of California would do, and it would go through that process. That's what would — that's what would happen in this case. And — If he got the alternative remedy of simply undoing the deal, then he would be an innocent man who might be subject to prosecution or might not. He would simply be — have — have no — no conviction at all, and the State would be faced with the prospect of perhaps trying to prosecute him again now, how many years later? That's right. Fifteen-some years later. That's exactly right. The — we would have to — He could be prosecuted for first degree. There's no remedy. In some ways, it might be a — a better remedy, because if that State should not prosecute, then he can go out and buy him then, you know? I don't have to — I don't have to conjecture too much about — about something like that. And he wouldn't be facing lifelong — lifelong parole, right? Or probation or whatever they say, right? That would be a circumstance. He would be facing the district attorney of the county. I'm just saying that that is not a non-remedy. I mean, that — that is, in some ways, could work out even better for your client. The answer is, in some ways, it might. He would be facing the — So this is not a situation where he gets nothing unless the remedy offered is a — is a enforcement of an illegal sentence. The same person who would be deciding his future is the district attorney of Ventura, who has told Don Glenn he may not go to the parole hearing to tell them that he believes Mr. Buckley should be released, because in his office, it's a policy which shouldn't do it. So you're right, he would have to go to the parole hearing. Have you all tried to settle this case? Pardon? Have you all tried to settle this case? No. There hasn't been any sort of discussions of that kind. The time has expired. Maybe a good idea. Thank you, Honor. Could you address the remedy issue? Yes. Assuming that we don't agree with your – assuming that a remedy becomes relevant. Assuming that a remedy is called for, well, the AEDPA or the AEDPA is all about deference. It is about deferring to State court judges and trusting State court judges to enforce the Federal Constitution. And that's what Santabella really did as well, that the best court to determine what an appropriate remedy should be is the State court. Now, Respondent acknowledges that this Court has in the past ordered specific – excuse me – performance. Brown v. Poole is an example of that. But given the purpose to further comedy and Federalism – Well, is Brown involved in any legal sentence? Well, it says that the prosecutor didn't have the authority to recommend or didn't have the authority to offer. But it wasn't clear to me as to why the prosecutor didn't have authority to offer. Was it because constraints on her? The State also urges that the prosecutor have no right to offer Brown the deal that she maintains she reasonably understood and accepted. We're talking about Brown? You know why, Your Honor? Brown? Yes. Because the custody credit issue was such that it was 10 years before a defendant was eligible for parole at the time, and not 7-1⁄2 years. So he offered something that was contrary to State law? If we're talking about Brown v. Poole, yes, yes, offered something that was contrary to State law. The Respondent doesn't disagree that under Santabella, that if indeed, you know, this Court were to determine that it was a 15-year promise, that the State would be bound by the 15 years. Just because that category doesn't exist under the penal code, we acknowledge that the United States Supreme Court has said that when a promise is part of a bargain, that the district attorney is going to be held to that bargain. And doesn't State law so assume as well? I mean, Mosher and other places. I thought that State law. So State cases tend to see promises that are not legal or allegations of promises that aren't legal as less likely to be promises, but if they're promises, there's no State case saying they're unenforceable, is there? I'll stop my head, Your Honor. I don't know the answer to that question. I think that this issue comes up more often in Federal courts than it does in State courts, but we sure have endless litigation. Yes, Your Honor. A moment earlier, there were questions concerning the unavailability of Petitioner's attorney during the State court proceedings as to the writ. And I think it's important to point out that there was no IAC claim made in that State petition. The people could not have gone to Mr. Wixel and said, hey, would you sign this declaration that says, would you tell the Petitioner concerning the plea agreement? And no testimony, no declaration was presented from Petitioner at that time. There was no declaration presented from Petitioner's team of attorneys. And he was represented by three attorneys during the State habeas proceedings in the Superior Court that they tried to contact Mr. Wixel, and Mr. Wixel refused to speak with them. Nothing. I have one last question, quickly. During the plea colloquy, you represented that the Petitioner specifically recognized a 15-year life sentence. Where is that? I'm sorry. Could you repeat that?  I would say page 6, it's 42 of the, well, I have before me the appellant's response to order to produce State court records. It's just that long paragraph where he says, now I stated before, and so on and so on, and at the end of which he says yes. That's correct, Your Honor. But it wasn't really responsive to anything, except do you understand that to be the situation, i.e., was he going to testify? And the situation is everything that's come before. It certainly is responsive, Your Honor. What came before it was that the people will ask the court to declare it to be 15 years to life, and more and more and more is done. And that's what I understand the situation to be. Counsel, your time has expired. Thank you, Your Honor. Thank you. The argument is a decision that supports the calendar for the date of the case.
judges: Schroeder, Reinhardt, Kozinski, McKeown, Wardlaw, Fisher, Paez, Berzon, Tallman, Bybee, Callahan